

UNITED STATES DISTRICT COURT
DISTRICT OF CONNECTICUT

| | |
|---|---|
| JOHN K. DWIGHT, MARGO D. FORBES, PATRICIA D. HALLENBECK and ELIZABETH D. RICHARDSON,<br><br>Plaintiffs<br><br>v.<br><br>JP MORGAN CHASE BANK, Trustee of the Russell S. Dwight, Jr. Trust, and PATRICIA W. DWIGHT,<br><br>Defendants | :<br>:<br>:  CASE NUMBER 303 CV 117 (WWE)<br>:<br>:<br>:<br>:  October 27, 2003<br>:<br>:<br>:<br>: |

### PLAINTIFFS' REPLY TO DEFENDANTS' MEMORANDA IN OPPOSITION TO PLAINTIFFS' MOTION FOR PARTIAL SUMMARY JUDGMENT

Plaintiffs, John K. Dwight, Margo D. Forbes, Patricia D. Hallenbeck and Elizabeth D. Richardson ("Plaintiffs") by and through their attorneys, Gravel and Shea, respond to Defendants JP Morgan Chase Bank ("Defendant Bank") and Patricia W. Dwight's ("Defendant Dwight") Memoranda in Opposition to Plaintiffs' Motion for Partial Summary Judgment as follows.

I.   PRELIMINARY STATEMENT.

Resolution of Plaintiffs' Motion turns upon an interpretation of the language of the Russell S. Dwight, Jr. Trust (the "Trust"). Simply put, the question presented is whether the Trust permits Plaintiffs, as the majority of the adult beneficiaries "then entitled to receive income," to remove and replace the current trustee. Faced with the simplicity of this analysis, Defendants have largely avoided the question. Instead, they seek to divert the Court's attention to irrelevant inquiries as to <u>why</u> Plaintiffs wish to change the trustee. In doing so, they cite no

GRAVEL AND SHEA
ATTORNEYS AT LAW
P. O. Box 369
BURLINGTON, VERMONT
05402-0369

legal authority, much less language in the Trust Agreement, which authorizes or makes such an inquiry relevant. Defendants' approach is transparent.

Moreover, it is well beyond any concept of relevance for Defendants to speculate on the financial status of one of the Plaintiffs[1] or to suggest that a reputable financial institution proposed as a successor trustee, by virtue of its geographical proximity to one of the Plaintiffs,[2] must be corrupt and incapable of properly administering the Trust. Nothing in the Trust Agreement even remotely suggests these contentions are relevant and their inclusion in Defendant Dwight's Opposition (as adopted by Defendant Bank) provides no basis for denying Plaintiffs' Motion.[3]

It is equally irrelevant in this stage of the proceedings for Defendant Bank to defend against removal by citing the facts it allegedly considered before diverting all of the income of the Trust to Defendant Dwight. "A trustee commits a breach of trust not only where he violates a duty in bad faith, or intentionally although in good faith, or negligently, but also where he violates a duty because of a mistake as to the extent of his duties and powers." *Restatement of the Law (Second) of Trusts* § 201, Comment b. "This is true not only where his mistake is in regards to a rule of law, whether a statutory or common-law rule, but also where he interprets the

---

[1] Notably, neither defendant speculates regarding the financial status of the remaining Plaintiffs who have modest means.

[2] Defendant Bank, itself, is a successor trustee which does business in close physical proximity to one of the Trust's beneficiaries.

[3] Certainly in the District of Vermont, such ad hominem and irrelevant comments would be wholly disregarded in deciding whether partial summary judgment is appropriate. Plaintiffs have every confidence that the District of Connecticut is no less committed to focusing on the legal issues rather than upon Defendants' unsupported and inappropriate rhetoric.

trust instrument as authorizing him to do acts which the court determines he is not authorized by the instrument to do." *Id.* "In such a case, he is not protected from liability merely because he acts in good faith, nor is he protected merely because he relies upon the advice of counsel." *Id.* Accordingly, Defendant Bank's alleged good faith defense with regard to how and why it decided to distribute the Trust income to Defendant Dwight does not preclude this action and certainly does not govern the removal issue. It must therefore be disregarded in the context of Plaintiffs' Motion.

Finally, as demonstrated below, the two "legal" arguments which Defendants do raise are incorrect as a matter of law. They thus do not prevent partial summary judgment in Plaintiffs' favor.

II.  DEFENDANTS CITE NO AUTHORITY FOR THE PROPOSITION THAT PLAINTIFFS' GOOD FAITH MUST BE EXAMINED PRIOR TO REMOVAL OF DEFENDANT BANK AS TRUSTEE.

This is not an action seeking to punish an impoverished, ailing and aged widow who voluntarily gave up income to the Trust to which she was otherwise entitled, but one seeking a proper determination of a Trust Agreement which clearly reflects the settlor's intention that his second wife, Defendant Dwight, a multimillionaire in her own right, maintain the standard of living she enjoyed with the settlor, while ensuring that the bulk of his Estate pass to his own children. At issue in the case in chief (but not at all implicated in Plaintiffs' Motion) is not why Plaintiffs may want or need the income of the Trust, but whether Defendant Dwight's ample income from other sources, absence of substantial new expenses reflecting a change in circumstances, and a "budget" inflated with such items as $65,000 in "gifts," made Defendant

Bank's diversion of all of the income of the Trust to Defendant Dwight improper and a violation of its fiduciary duties. *See Restatement of the Law (Second) of Trusts* § 183 a ("When there are two or more beneficiaries of a trust, the trustee is under a duty to deal impartially with them.").

Correspondingly, Defendants' claim that this Court must decide whether Plaintiffs exercised their removal power in "good faith" before removal may be ordered is even further afield and is indeed a legal proposition of Defendants' own making. Neither the Trust Agreement nor the law of Connecticut requires an inquiry into a beneficiary's motives or "good faith" in seeking the removal of a fiduciary as a precondition to removal.[4] The one case cited by Defendant Bank in support of Defendants' claim to the contrary addresses a *Probate Court's* discretion to remove a fiduciary under prior law. *See Carroll v. Arnold,* 141 A. 657, 660 (Conn. 1928). The *Carroll* court did not even address the motives of the party seeking removal. Defendants cite no authority, and Plaintiffs have found none, for the proposition that *Plaintiffs'* motives are relevant in deciding whether to remove Defendant Bank as trustee of the Trust.

Likewise, whether removal is for "punishment's sake," as opposed to a legitimate concern regarding the trustee's performance of its duties, is relevant only when there is a finding that no continuing harm will occur and no beneficiary or the estate will benefit from removal. *Carroll,* 141 A. at 600; *see also Ramsdell v. Union Trust Company,* 519 A.2d 1185 (Conn. 1987) ("In the absence of continuing harm to the interests of the estate and its beneficiaries, removal is not justified merely as a punishment for a fiduciary's past misconduct"). It is

---

[4] Indeed, statutory authority to remove a trustee no longer requires a showing of any cause but may instead be based upon a substantial change in circumstances or consent of the beneficiaries if removal is in their best interests and is not inconsistent with the material purpose of the governing instrument. Connecticut General Statutes, § 45a-242(a)(4).

undisputed that Plaintiffs will continue to suffer harm if Defendant Bank is not removed as trustee of the Trust as Defendant Bank has declared no present intention of distributing *any* of the income of the Trust to Plaintiffs. *See* Detoro Affidavit ¶ 12 ("The plaintiffs are correct, however, in as much as Chase, to date, has not, in its judgment, decided that excess income exists from the trust to distribute to the plaintiffs").

In summary, there is no factual or legal basis for Defendants' claims that this Court cannot decide the removal issue without first examining whether Plaintiffs have acted in "good faith" in exercising a removal power which requires no showing of cause. Any issues which Defendants raised with regard to Plaintiffs' alleged motives thus do not preclude partial summary judgment in Plaintiffs' favor.

III.   THE COURT'S GRANTING OF PLAINTIFFS' MOTION FOR PARTIAL SUMMARY JUDGMENT WILL HAVE NO IMPACT ON ITS SUBJECT MATTER JURISDICTION.

Although neither Defendant objected to Plaintiffs' amendment of their Complaint to add the removal issue, Defendant Bank now asserts that the Court must refrain from granting Plaintiffs' Motion because if it does so, diversity jurisdiction will be destroyed. Bank's Opposition at pp. 5-7. Not only is the argument wrong on the facts, it is wrong on the law.

If all of the income of the Trust is distributed to Defendant Dwight, in approximately two years' time, the amount will exceed $75,000.00. Plaintiffs thus satisfied the jurisdictional requirements in filing this action as Defendant Bank clearly indicated its intent to distribute all of the Trust's income to Defendant Dwight. In addition, Plaintiffs sought their attorney's fees and punitive damages in addition to the amounts wrongfully distributed to Defendant Dwight. *See* J.

Moore, 15 *Moore's Federal Practice* § 102.106[4] (3d ed. 2003) ("punitive damages are properly considered in determining whether the amount in controversy exceeds the jurisdictional minimum"); § 102.106[6][a] (reasonable attorney's fees may be included in requisite jurisdictional amount if state law permits their recovery).

Plaintiffs' Motion does not alter the jurisdictional analysis. In deciding whether Plaintiffs have satisfied the amount in controversy requirements, the removal issue is not examined in isolation.[5] "[A]ggregated claims have never been treated individually for jurisdictional purposes and nothing in the Supplemental Jurisdiction Statute indicates to the contrary." J. Moore, 15 *Moore's Federal Practice* § 102.104 (2003); *Wolde-Meskel v. Vocational Instruction Project Community Services, Inc.*, 166 F.3d 59, 62 (2d Cir. 1999) ("Since the diversity statute confers jurisdiction over 'civil actions' rather than specific claims alleged in a complaint, a plaintiff is permitted to aggregate claims in order to satisfy the amount in controversy requirement").

"As with the determination of citizenship, the relevant time for establishing the amount in controversy is at the commencement of the action." 15 J. Moore, *Moore's Federal Practice* § 102.104[1] (2003); *Wolde-Meskel*, 166 F.3d at 62. As a result, "[e]vents occurring subsequent to the institution of suit which reduce the amount recoverable below the statutory limit do not oust jurisdiction." *Wolde-Meskel*, 166 F.3d at 62 (quoting *St. Paul Mercury Indem. Co. v. Red Cab Co.*, 303 U.S. 283, 289-90 (1938)). "Thus, it is 'the well-settled rule that a federal court does not lose jurisdiction over a diversity action which was well founded at the outset even though ... the

---

[5] Defendant Bank's jurisdictional argument necessarily assumes that a new trustee will refuse any further distributions to Defendant Dwight now or in the future. *See* Bank's Opposition at p. 6 ("Although the time at which the amount in controversy is measured is at the date that the suit is filed, if Chase is removed as Trustee, there will be no prospect of the Plaintiffs recovering the jurisdictional amount"). There is no evidence, and Defendant Bank cites none, to support this factual assertion.

amount recovered falls short of [the statutory minimum]." *Wolde-Meskel,* 166 F.3d at 62 (quoting *Rosado v. Wyman,* 397 U.S. 397, 405 n.6 (1970)).

The proper inquiry starts with the "rebuttable presumption that the face of the complaint is a good faith representation of the actual amount in controversy." *Wolde-Meskel,* 166 F.3d at 63; *Tongkook America, Inc. v. Shipton Sportswear Company,* 14 F.3d 781, 785-86 (2d Cir. 1994) ("If the right of recovery is uncertain, the doubt should be resolved ... in favor of the subjective good faith of the plaintiff"). In this case, "there has been no argument presented or finding made that the jurisdictional allegations of the complaint were made in bad faith in an attempt to feign jurisdiction." *Wolde-Meskel,* 166 F.3d at 63. Nor could the Defendants ethically makes such an allegation or satisfy the standards for a bad faith filing:

> "... to demonstrate a filing in bad faith, '[i]t must appear to a legal certainty that the claim is really less than the jurisdictional amount to justify dismissal.' *St. Paul,* 303 U.S. at 289, 58 S.Ct. at 590. Legal certainty is analyzed by what appears on the face of the complaint; subsequent events—such as a valid defense offered by the defendant, or actual recovery in an amount less than the minimum jurisdictional amount –'do [ ] not show [plaintiff's] bad faith or oust the jurisdiction." *St. Paul,* 303 U.S. at 289, 58 S.Ct. at 590."

*Wolde-Meskel,* 166 F.3d at 63 (footnote omitted).

As for Defendant Bank's claim that "there is a genuine issue of material fact as to whether the Plaintiffs' [sic] satisfy the jurisdictional minimum amount in controversy requirement, *particularly* if the Plaintiffs' motion is granted and Chase is removed as Trustee," Bank's Opposition at p. 6, the Second Circuit has firmly rejected this very argument. *Wolde-Meskel,* 166 F.3d at 63 ("Summary judgment on Wolde-Meskel's breach of contract claim was ... appropriate. But while that ruling reduced the amount in controversy, it did not establish

the quite distinct proposition that the amount claimed was never in controversy. We cannot conclude that the face of Wolde-Meskel's complaint was so patently deficient as to reflect to a legal certainty that he could not recover the amount alleged, or that the damages alleged were feigned to satisfy jurisdictional minimums"). Accordingly, the granting of Plaintiffs' Motion and the removal of Defendant Bank as trustee of the Trust will have **no impact** on this Court's subject matter jurisdiction. There are thus no genuine issues of material fact with regard to jurisdiction which preclude this Court's consideration of Plaintiffs' Motion.

IV.  THE PLAIN LANGUAGE OF THE TRUST AGREEMENT PERMITS PLAINTIFFS TO REMOVE THE TRUSTEE.

At issue in this case is the following minimal standard for trustee removal:

> "*Any* Trustee serving hereunder may be removed *at any time* by written notice delivered to the Trustee from Grantor, if living; but if not, from a majority of (i) the adult beneficiaries then entitled to receive income distributions hereunder, and (ii) any minor beneficiaries by their guardians or custodians."

Plaintiffs' Statement, Exhibit A (emphasis supplied). There is no requirement that a showing of trustee misconduct precede removal.[6]

The Trust Agreement identifies two classes of beneficiaries: those who are among the class of beneficiaries eligible to receive income distributions from the Trust and those who are not "then entitled" to receive income because their right to receive income is contingent upon the death of the person from whom their right is derived. When the Trust Agreement is examined as a whole, the only reasonable interpretation of the removal provision is that Plaintiffs are

---

[6] Without reference to any language in the Trust Agreement or other authority, Defendant Bank argues that before removal may occur, Plaintiffs "first have to establish that Chase abused its discretion, which involves genuine issues of material fact." Defendant Bank's Opposition at p. 7.

presently "entitled" to receive income from the Trust even if they are not "actually receiving it." Any other interpretation renders the phrase "majority of beneficiaries" meaningless and permits the Trustee to control who may remove it through its power to control the actual distribution of income.

Plaintiffs' interpretation of the removal provision is further supported by the language which Russell Dwight presumably *would have chosen* had he sought to limit the removal power to Defendant Dwight. It was clearly within the contemplation of Russell Dwight that Defendant Dwight might, from time to time, be the only *actual* recipient of income. Had Russell Dwight intended to limit the removal power to only those *"actually receiving"* or *"then receiving"* income from the Trust or simply to Defendant Dwight, he would have chosen language to reflect that intention.

In contrast, there is no evidence to support Defendant Dwight's contention that "the grantor intended his second wife to have the income, and he did not want her stepchildren [otherwise known as the grantor's own children] appointing a trustee of their choosing at a time when she was the one 'then entitled' to receive the income." Defendant Dwight's Opposition at p. 5. Had Russell Dwight simply intended Defendant Dwight "to have the income" of the Trust, he would not have imposed a standard for determining whether she is entitled to it which essentially requires her to live off her own income if she decides to partake of a lifestyle more opulent than the modest standard of living she enjoyed with the grantor.[7] The grantor imposed no similar restrictions on income distributions to his children. Russell Dwight thus evidenced no

---

[7] While Defendants may contest certain facts, they cannot contest the tax returns, income statements and "budget" which establish the standard of living enjoyed by Russell Dwight and Defendant Dwight, Defendant Dwight's current sources of income, and Defendant Dwight's alleged expenses.

intent to restrict the removal power to his second wife merely because she was the only beneficiary actually receiving income at a particular moment in time.

In summary, the plain language of the Trust Agreement, in the context of the undisputed facts, dictates a conclusion that the power of removal extends beyond the person or persons actually receiving income to those "entitled" to receive income pursuant to the distribution terms of the Trust: the Plaintiffs and Defendant Dwight. Because a majority of those beneficiaries joined in the removal notice to the Trustee, under the plain language of the Trust Agreement, the notice of removal must be honored.

## CONCLUSION

For the foregoing reasons and for the reasons set forth in their Motion for Partial Summary Judgment and Incorporated Memorandum of Law, Plaintiffs respectfully request that their Motion be granted.

Plaintiffs, John K. Dwight, Margo D. Forbes, Patricia D. Hallenbeck and Elizabeth D. Richardson

_____
Robert B. Hemley, Esq. (ct24489)
Gravel and Shea
P.O. Box 369
Burlington, VT 05402-0369
(802) 658-0220

Peter W. Benner, Esq.
Catherine M. Esposito, Esq.
Shipman & Goodwin, LLP
One American Row
Hartford, CT 06103-2819