FILED

UNITED STATES DISTRICT COURT
DISTRICT OF CONNECTICUT

2003 NOV 14  P 12: 35

US DISTRICT COURT
BRIDGEPORT CT

| | |
|---|---|
| JOHN K. DWIGHT, et al., | ) |
| | ) |
| Plaintiffs, | ) |
| | ) |
| v. | ) CIVIL ACTION NO. 303CV 0117 (WWE) |
| | ) |
| JP MORGAN CHASE BANK, | ) |
| TRUSTEE, et al., | ) |
| | ) |
| Defendants. | ) NOVEMBER 13, 2003 |
| | ) |

MEMORANDUM OF LAW IN SUPPORT OF
DEFENDANT JP MORGAN CHASE BANK, TRUSTEE'S
MOTION FOR PARTIAL SUMMARY JUDGMENT

I.  **Preliminary Statement**

This defendant, **JP MORGAN CHASE BANK, TRUSTEE** ("Chase"), submits this memorandum of law in support of its motion for partial summary judgment against the plaintiffs, **JOHN K. DWIGHT, MARGO D. FORBES, PATRICIA D. HALLENBECK,** and **ELIZABETH D. RICHARDSON** (the "Plaintiffs"), of even date herewith. Based on the plain language of the trust instrument at issue and the legal standard by which this Court must judge the discretionary actions taken by Chase, as trustee, thereunder, Chase is entitled to summary judgment on Counts I (breach of fiduciary duty), III (negligence/reklessness), and IV (conversion) of the Plaintiffs' Amended Complaint as a matter of law.

1

**II.    Statement of Undisputed Facts**

By Trust Agreement dated January 27, 1982 (the "Trust Agreement"), Russell S. Dwight, Jr. ("Grantor") established a trust which became irrevocable upon the Grantor's death (the "Trust"). Form 26(F) Report Of Parties' Planning Meeting, Statement of Undisputed Facts. The Grantor died on February 4, 1993. Chase is the successor trustee of the Trust. Id. Defendant **PATRICIA W. DWIGHT** ("Mrs. Dwight") is the Grantor's widow and a beneficiary under the Trust. Id. Plaintiffs are the Grantor's four adult children from a prior marriage and are also beneficiaries[1] under the Trust. Id.

The Trust Agreement provides, in part, that:

> Upon Grantor's death, the Trustee shall pay the net income of the Trust Estate to or apply for the benefit of Grantor's wife, PATRICIA W. DWIGHT, during her lifetime or until her remarriage; provided, however, if and to the extent that the total amount of income available to Grantor's wife from all sources, including this trust shall, from time to time, in the sole judgment of the Trustee, exceed that which is deemed necessary for the comfortable support at the standard of living theretofore maintained by Grantor and his wife, then the Trustee shall distribute such excess income to or for the benefit of Grantor's then living descendants, per stirpes.

Ex. "A" to Plaintiffs' September 24, 2003 statement of undisputed facts ("Plaintiffs' Statement").

Starting with the year of the Grantor's death and continuing through each and every year thereafter until late summer, 2002, Mrs. Dwight declined the income from the Trust so that it could be paid to the Plaintiffs. Aff. of Pamela J. Detoro, dated October 15, 2003 ("Detoro Aff."), at ¶ 5. By letter dated August 29, 2002, however, Mrs. Dwight, who was

---

[1] Chase and Mrs. Dwight characterize the Plaintiffs as "contingent" beneficiaries pursuant to the plain meaning of the Trust Agreement.

then 86 years old, wrote to Chase, requesting that the bank begin to distribute the income from the Trust to her. Id.

> During the past year [wrote Mrs. Dwight], because of a fall
> and an intestinal problem, I have been hospitalized twice
> and have had an extended stay in a nursing home. In addition,
> I contracted Lyme disease. These medical problems have
> resulted in substantial medical expenses.
>
> For health reasons, I have decided to hire a live-in companion.
> I anticipate the cost of such companion to be roughly
> $200 daily. In addition, because of my lack of vision, I can
> no longer drive and have to hire a driver to take me on errands
> and to appointments.

Ex. "C" to Plaintiffs' Statement.

In response, Chase, by and through the then account manager for this matter, Sheela Amembal, spoke with Mrs. Dwight about her needs and standard of living; Chase contacted and obtained from Mrs. Dwight's lawyers a copy of Mrs. Dwight's 2001 Form 1040 federal income tax return and Mrs. Dwight's budget, showing Mrs. Dwight's (i) 2001 actual expenses, (ii) 2002 actual expenses through September and projected expenses for October through December, and (iii) 2003 projected expenses. Chase also contacted Attorney Edgar T. See, the drafter of the Trust Agreement, and was informed that Chase need only consider Mrs. Dwight's income under the Trust Agreement.[2] In addition, Attorney See provided Chase with copies of (i) a letter form the Grantor's and Mrs. Dwight's accountants, dated April 29, 1983, discussing their 1982 tax return, (ii) the Grantor's and Mrs. Dwight's 1982 Form 1040 federal tax return, (iii) the Grantor's and Mrs. Dwight's 1982 Connecticut

---

[2] Mr. See also testified at his deposition that Mrs. Dwight was the primary income beneficiary under the Trust Agreement. Aff. Of Mark J. Kovack, dated November 13, 2003 ("Kovack Aff. No. 2"), Ex. 1.

Capital Gains & Dividends Tax Return, (iv) the Grantor's and Mrs. Dwight's 1983 Form 1040 federal tax return, and (v) the Grantor's and Mrs. Dwight's 1983 Connecticut Capital Gains & Dividends Tax Return. Chase again contacted Mrs. Dwight to inquire whether there were any other trusts of which she is a beneficiary from which she was deferring income. Mrs. Dwight advised Chase there was only one other trust from which she receives income, a trust setup by her late father, and that she was not deferring any of the income thereunder. Detoro Aff., at ¶ 6; Ex. "3" to Aff. of Mark J. Kovack, dated October 15, 2003 ("Kovack Aff").

Ms. Amembal reviewed and analyzed all of the data and information that she had received and collected, and then presented Mrs. Dwight's request for income to Chase's "discretionary action committee" (the "D.A.C."). The D.A.C. convened and consider Mrs. Dwight's request in late November and again in early December, 2002, and, upon consideration of the foregoing information, voted to pay the net income of the Trust to Mrs. Dwight. Id.

By letter dated December 6, 2002, Chase advised the Plaintiffs of its decision. Commencing January 1, 2003, the net income of the Trust has been paid to Mrs. Dwight. Detoro Aff., at ¶ 8. Immediately thereafter, by Complaint dated January 16, 2003, the Plaintiffs sued Chase for breach of fiduciary duty, a declaratory judgment construing Chase's discretionary duties under the Trust Agreement, negligence, and conversion. Id., at ¶ 9.

### III. Law and Argument

The language of the Trust Agreement at issue here is clear, and Chase's exercise of its discretionary powers thereunder is entirely consistent with the plain meaning of the instrument itself as a matter of law. Accordingly, under the applicable standard for granting

summary judgment, Chase respectfully submits that it is entitled to a summary judgement on Counts I, III and IV of the Plaintiffs' Amended Complaint.

A.  The Standard for Summary Judgment

Summary judgment is a way to dispose of cases in a manner which is speedier and less expensive for all concerned than a full dress trial. Celotex Corp. v. Catrett, 477 U.S. 317, 327, 106 S.Ct. 2548 (1986). The standards for resolving a motion for summary judgment in our federal courts are well established. The standard is expressly set out in Rule 56(c) of the Federal rules of Civil Procedure: a district court shall grant a motion for summary judgment if "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." No longer viewed as a harsh procedural devise, summary judgment has been championed by the Supreme Court as an important mechanism for furthering the mandate of the Federal Rules to secure the just, speedy and inexpensive determination of every action. Celotex Corp. v. Catrett, *supra*, at 327.

It is Chases' burden, as the summary judgment movant, to show that there are no genuine issues of material fact for trial. Donahue v. Windsor Locks Bd. Of Fire Comm'rs, 834 F.2d 54, 57 (2d Cir. 1987). A "material fact" is one which would permit "a rational trier of fact to find for the non-moving party." Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 587, 106 S. Ct. 1348 (1986). To satisfy their initial burden, Chase must first make a prima facie showing that summary judgment is appropriate under Rule 56. Celotex Corp. v. Catrett, *supra*. This burden does not require Chase to disprove the Plaintiffs' claims, but is discharged simply by demonstrating an absence of evidence in support of the opponent's claims. Id., at 325.

Once the movant has satisfied its initial burden, the burden shifts to the opposing party, here the Plaintiffs, to show that a genuine issue of material fact exists for trial. Fed. R. Civ. P. 56(e); Weg v. Macchiarola, 995 F.2d 15, 18 (2d Cir. 1993). However, the Plaintiffs "must do more than simply show that there is some metaphysical doubt as to a material fact." Matsushita Elec. Indus. Co. v. Zenith Radio Corp., *supra*, 475 U.S. at 586. As the Second Circuit has recognized, the "mere possibility that a factual dispute may exist, without more, is not sufficient to overcome a convincing presentation" by the movant. Quinn v. Syracuse Model Neighborhood Corp., 613 F.2d 438, 445 (2d Cir. 1980). Instead, the Plaintiffs must present the court with actual evidence specifically demonstrating the existence of a genuine issue of material fact. Fed. R. Civ. P. 56(e); Weg v. Macchiarola, *supra*.

Moreover, if the Plaintiffs are unable to establish the existence of an element essential to their case on which they bear the burden of proof at trial, a genuine issue of material fact cannot exist "since a complete failure of proof concerning an essential element of the nonmoving party's case necessarily renders all other facts immaterial." Celotex Corp., *supra*, 477 U.S. at 323. Finally, the law of the State of Connecticut governs the substantive elements of the Plaintiffs' claims. Belmac Hygiene, Inc. v. Belmac Corp., 121 F.3rd 835, 840 (2d. Cir 1997) (federal court sitting in diversity must follow the law directed by the highest court of the state whose law is found to be applicable).

Applying the above standards and tests to the plain meaning of the Trust Agreement and Chase's undisputed actions thereunder, Chase did not abuse its discretion in paying the net Trust income to Mrs. Dwight as a matter of law. Accordingly, a summary judgment should enter in Chase's favor on each of Counts I, III and IV of the Amended Complaint.

B.     The plain meaning of the Trust Agreement controls the Plaintiffs' claims.

It is well settled that in determining the discretionary powers conferred upon a trustee under a testamentary trust, "the expressed intent of the testator must control. This intent is to be determined from reading the instrument as a whole in the light of the circumstances surrounding the testator when the instrument was executed, including the condition of his estate, his relations to his family and the beneficiaries and their situation and condition." Gimbel v. Bernard F. & Alva B. Gimbel Foundation, Inc., 166 Conn. 21, 26, 347 A.2d 81 (1974). The primary function and duty of the courts is to ascertain the intent of the testator and to carry it into effect. Hartford National Bank & Trust Co. v. Thrall, 184 Conn. 497, 502, 440 A.2d 200 (1981). Where the testator's intent is apparent, the courts must give effect to that intent. Mott v. Teagle Foundation, Inc., 156 Conn. 407, 413, 242 A.2d 739 (1968). The words used by the testator are to be interpreted according to their ordinary meaning unless the context or circumstances indicate a different meaning. Dei Cas v. Mayfield, 199 Conn. 569, 572, 508 A.2d 435 (1986).

The court may not modify a will by construction in order to make it conform to its own opinion as to a more equitable distribution. Travelers Bank & Trust Co. v. Birge, 136 Conn. 21, 26, 68 A.2d 138 (1949). The question is what intention the testator has expressed in the will and absent any latent ambiguity, that intention is to be determined from the will itself without the use of extrinsic evidence. Morehouse v. Bridgeport City Trust, 137 Conn. 209, 217, 75 A.2d 493 (1950). "The language of the will is controlling. When the purpose of the testator is reasonably clear by reading the words in their natural sense, we must not be deterred by the conjecture that some remote consequences were not in the testator's mind, or

might not have been quite satisfactory to him, if he had thought of them." (Internal quotations and citations omitted) Travelers Bank & Trust Co. v. Birge, *supra*, 136 Conn. at 26.

C. <u>Liability attaches to a Trustee only in the event of an abuse of discretion</u>.

With respect to a trustee's discretionary powers themselves, it is equally well established that "[t]o the extent to which [a trustee has] discretion, the court will not attempt to control [his] exercise of it as long as [he has] not abused it." Gimbel v. Bernard F. & Alva B. Gimbel Foundation, Inc., *supra*, 166 Conn. 34. "This ordinarily means that so long as he acts not only in good faith and from proper motives, but also within the bounds of reasonable judgment, the court will not interfere; but the court will interfere when he acts outside the bounds of a reasonable judgment." 3 Scott, Trusts (4th Ed. Fratcher 1989) 187, pp. 14-15. "When discretion is given to a trustee, his exercise of it is subject to the control of the court to the extent, and only to the extent, that there has been an abuse of discretion." Bridgeport v. Reilly, 133 Conn. 31, 36-37, 47 A.2d 865 (1946); *accord*, Zeoli v. Commissioner of Social Services, 179 Conn. 83, 89, 425 A.2d 553 (1979). Liability of a trustee vested with discretionary powers "attaches only if the discretion is abused." U.S. Trust Co. v. Bohart, 197 Conn. 34, 48, 495 A.2d 1034 (1985). The only attack that can be made upon the discretionary actions of a trustee "would be that it was the result of fraud, bad faith or abuse of discretion." Auchincloss v. City Bank Farmers Trust Co., 136 Conn. 266, 273, 70 A.2d 105 (1949).

The language of the Trust Agreement at issue here is clear, and Chase's exercise of its discretionary powers thereunder is entirely consistent with the plain meaning of the trust instrument itself. This Court, therefore, should not substitute the Plaintiffs' various views for the judgment made by Chase.

D.  <u>The Trust Agreement</u>

Article IV of the Trust Agreement provides that "the Trustee *shall* pay the net income of the Trust Estate to or apply for the benefit of Grantor's wife, PATRICIA W. DWIGHT, during her lifetime or until her remarriage." (Emphasis added.) Only "if and to the extent that the total amount of income available to Grantor's wife from all sources, including this trust shall, *from time to time, in the sole judgment* of the Trustee, exceed that which is deemed necessary for the comfortable support at the standard of living theretofore maintained by Grantor and his wife," may "excess income" be distributed to the Grantor's descendants. (Emphasis added.) Clearly, Mrs. Dwight is the primary beneficiary of the Trust and the Plaintiffs are in no position to insist that they receive trust income unless and until it has been demonstrated to Chase's reasonable satisfaction that the conditions necessary for a change have been met.

The Plaintiffs, however, have taken a position which stands the plain language of the Trust Agreement entirely on its head, consistently arguing:

> Article IV provides that Patricia Dwight is to receive income only to the extent that the Trustee, in the exercise of its sound and reasonable discretion, determines that the income available to her "from all sources" is sufficient to provide her "comfortable support at the standard of living theretofore maintained by ... (Mr. Dwight and Patricia Dwight in 1982). If those conditions are not met, the income is to be distributed ... to Mr. Dwight's living descendants, per stirpes.

Kovack Aff., No. 2. Ex. 2. Thus, although the Plaintiffs concede, as they must, the broad discretionary powers conferred upon Chase under the Trust Agreement, they conveniently (but quite improperly) ignore the instrument's plain and primary instruction to Chase that it "shall pay" the trust income to Mrs. Dwight "during her lifetime" and may only pay any "excess

9

income" thereunder to the Grantor's descendants "if" "from time to time," Chase, "in [its] sole judgment" determines that there is in fact such "excess income" available to distribute to the Grantor's descendants. The Plaintiffs' construction of the Trust Agreement ignores basic principles of language and construction and renders the above quoted terms entirely meaningless.

Chase's interpretation of and operations under the Trust Agreement is entirely consistent with the Grantor's intent as expressed by the plain and ordinary meaning of the language used by him in the trust instrument itself.

E. <u>Chase did not abuse its discretionary powers as a matter of law.</u>

There is no evidence, as a matter of law, that Chase abused its discretion or that it exercised same in bad faith or unreasonably in deciding that there was no "excess income" available under the Trust to distribute to the Plaintiffs. The intent of the Grantor to give Chase the greatest discretion possible in making that decision is evident from the use of the phrase "in the sole judgement of the Trustee." See, <u>Auchincloss v. City Bank Farmers Trust Co.</u>, *supra*, 136 Conn. at 269 (intent of testator to give trustees greatest discretion possible is evident from the use of the phrases "absolute discretion" and "deem advisable").[3] Chase's judgment, therefore, is subject to the control of this Court only to the extent that there has

---

[3] Here, in addition to the "sole judgment" discretionary power granted Chase in Article IV, the Trust Agreement also empowers Chase to exercise its "sole discretion" in Article II (invasion of principal) and Article III (payment of expenses), and "sole judgment" and "sole discretion" in Article VI (termination of the Trust). In addition, the Grantor instructed that Chase is to serve without bond notwithstanding "any law of any state or jurisdiction to the contrary" (Article IX), and provided that a "written statement of the Trustee as to whether this Trust Agreement has been changed, modified or altered and the extent of such change, modification or alteration shall be conclusive evidence thereof, binding upon all persons dealing with the Trustee and upon all persons taking an interest under this Agreement" (Article XIV). See, Ex. "A" to Plaintiffs' Statement. Clearly, the Grantor intended for Chase to have the greatest discretion possible.

10

been an abuse of discretion. <u>Gimbel v. Bernard F. & Alva B. Gimbel Foundation, Inc.</u>, *supra*, 166 Conn. 34; <u>Bridgeport v. Reilly</u>, supra, 133 Conn. 36-37; <u>Zeoli v. Commissioner of Social Services</u>, *supra*, 179 Conn. 89. There is no evidence, however, that Chase acted in bad faith or with improper motives as a matter of law. Certainly, there is no basis for this Court to rule that Chase's decision making was outside the bounds of a reasonable judgment.

In response to Mrs. Dwight's first-time request for Trust income, Chase, by and through the then account manager for this matter, Sheela Amembal, spoke with Mrs. Dwight about her needs and standard of living; Chase contacted and obtained from Mrs. Dwight's lawyers a copy of Mrs. Dwight's 2001 Form 1040 federal income tax return and Mrs. Dwight's budget, showing Mrs. Dwight's (i) 2001 actual expenses, (ii) 2002 actual expenses through September and projected expenses for October through December, and (iii) 2003 projected expenses. Chase also contacted Attorney Edgar T. See, the drafter of the Trust Agreement, and was informed that Chase need only consider Mrs. Dwight's income under the Trust Agreement. In addition, Attorney See provided Chase with copies of (i) a letter form the Grantor's and Mrs. Dwight's accountants, dated April 29, 1983, discussing their 1982 tax return, (ii) the Grantor's and Mrs. Dwight's 1982 Form 1040 federal tax return, (iii) the Grantor's and Mrs. Dwight's 1982 Connecticut Capital Gains & Dividends Tax Return, (iv) the Grantor's and Mrs. Dwight's 1983 Form 1040 federal tax return, and (v) the Grantor's and Mrs. Dwight's 1983 Connecticut Capital Gains & Dividends Tax Return. Chase again contacted Mrs. Dwight to inquire whether there were any other trusts of which she is a beneficiary from which she was deferring income. Mrs. Dwight advised Chase there was only one other trust from which she receives income, a trust setup by her late father, and that she was not deferring any of the income thereunder. Detoro Aff., at ¶ 6; Ex. "3" to Kovack Aff.

Ms. Amembal reviewed and analyzed all of the data and information that she had received and collected, and then presented Mrs. Dwight's request for income to Chase's "discretionary action committee" ( the "D.A.C."). The D.A.C. convened and consider Mrs. Dwight's request in late November and again in early December, 2002, and, upon consideration of the foregoing information, voted to pay the net income of the Trust to Mrs. Dwight. Id.

The Plaintiffs may not like the fact that Chase accepted Mrs. Dwight's word without making her swear an oath; they may not like the fact that Chase accepted Mrs. Dwight's and the Grantor's tax returns without retaining a forensic accountant to analyze same; they might not like that Chase did not demand for Mrs. Dwight to "down size" and sell her home or other belongings instead of turning to the Trust income (which her husband expressly granted to her) when her living expenses, loss of investment income and/or declining health prevented her from bypassing the income in favor of her step children as she had always done in the past. None of the Plaintiffs' complaints, however, individually or collectively, amount to an abuse of discretion by Chase as a matter of law. See, U.S. Trust Co. v. Bohart, *supra*, 197 Conn. 49 (" a mere error in judgment [by a trustee] will not" result in liability).

As a matter of law, Chase's judgment does not amount to an abuse of the broad discretion granted to it under the Trust Agreement. There is absolutely no compelling evidence that Chase did not act in good faith or from proper motives in deciding to pay the net income from the Trust to the 86 year old Mrs. Dwight, who is in failing health, suffering from intestinal problems, diabetes, lyme disease and loss of sight. There is no basis for this Court, as a matter of law, to find that Chase acted "outside the bounds of reasonable

judgment." Accordingly, summary judgment should enter in favor of Chase with respect to the Plaintiffs' claim of breach of fiduciary duty in Count I of the Amended Complaint.

For the same reasons, summary judgment should enter in Chase's favor on Counts III and IV.

F. <u>There is no evidence that Chase acted negligently or recklessly</u>.

In Count III, the Plaintiffs' characterize Chase's judgment to pay the net income from the Trust to Mrs. Dwight as having been exercised "negligently and with reckless indifference towards the interests of Plaintiffs." Amended Complaint, Count III, at ¶ 42. As already discussed above, the discretion exercised by Chase in reaching its judgment can only be disturbed by this Court if Chase abused that discretion. See, e.g., Auchincloss v. City Bank Farmers Trust Co., *supra*, 136 Conn. at 273 ("the only attack which could be made upon the [discretionary] actions of the trustees would be that it was the result of fraud, bad faith or abuse of discretion"). As a matter of law, based upon the undisputed facts of Chase's decision making set forth above, Chase did not abuse its discretion or act outside the bounds of a reasonable judgment. There is no basis to find that it was negligent. There is no basis to declare Chase's conduct "reckless."

In order to establish that a defendant's conduct was reckless, "the plaintiff must prove, on the part of the defendants, the existence of a state of consciousness with reference to the consequences of one's acts. Such conduct is more than negligence, more than gross negligence. In order to infer it, there must be something more than a failure to exercise a reasonable degree of watchfulness to avoid danger to others or to take reasonable precautions to avoid injury to them. It is such conduct as indicates a reckless disregard of the just rights or safety of others or of the consequences of the action. In sum, such conduct tends to take

on the aspect of *highly unreasonable conduct*, involving an *extreme departure* from ordinary care, in a situation where a *high degree of danger* is apparent." (Citations and internal quotation marks omitted) Elliott v. City of Waterbury, 245 Conn. 385, 415, 715 A.2d 27 (1998) (emphasis added).

As a matter of law, Chase's judgment and the decision making it undertook to reach that judgment is not reckless within the meaning of Connecticut law. Chase submits, therefore, that summary judgment should enter on both of the Plaintiffs' negligent and reckless claims.

G.   Chase's reasonable exercise of discretion cannot amount to conversion as a matter of law.

In the final count of their complaint, the Plaintiffs accuse Chase of converting their property. Connecticut's Supreme Court has defined conversion as "some unauthorized act which deprives another of his property permanently or for an indefinite time; some unauthorized assumption and exercise of the powers of the owner to his harm. The essence of the wrong is that the property rights of the plaintiff have been dealt with in a manner adverse to him, inconsistent with his right of dominion and to his harm." (Internal quotation marks omitted.) Aetna Life & Casualty Co. v. Union Trust Co., 230 Conn. 779, 790-91, 646 A.2d 799 (1994). Thus, there can be no conversion here, as a matter of law, given Chase's bona fide exercise of its discretionary powers under the Trust Agreement to pay Mrs. Dwight the net income of the Trust.

IV.   **Conclusion**

For all of the foregoing reasons, Chase respectfully requests that summary judgment enter in its favor on Counts I, II, and IV of the Plaintiffs' Amended Complaint.

THIS DEFENDANT,
JP MORGAN CHASE BANK, TRUSTEE

By /s/ Mark J. Kovack
Mark J. Kovack, Esq./ct01431
WAKE, SEE DIMES & BRYNICZKA
27 Imperial Avenue
Post Office Box 777
Westport, CT 06881-0777
Telephone: (203) 227-9545
Its Attorneys