UNITED STATES DISTRICT COURT
DISTRICT OF CONNECTICUT

| | |
|---|---|
| JOHN K. DWIGHT, et al., ) | |
| ) | |
| Plaintiffs, ) | |
| ) | |
| v. ) | CIVIL ACTION NO. 303CV 0117 (WWE) |
| ) | |
| JP MORGAN CHASE BANK, ) | |
| TRUSTEE, et al., ) | |
| ) | |
| Defendants. ) | DECEMBER 30, 2003 |

**DEFENDANT JP MORGAN CHASE BANK, TRUSTEE'S
REPLY BRIEF TO PLAINTIFFS' OPPOSITION TO MOTION FOR PARTIAL
SUMMARY JUDGMENT**

I.  **Preliminary Statement**

This defendant, **JP MORGAN CHASE BANK, TRUSTEE** ("Chase"), submits this brief in reply to that portion of the December 15, 2003 memorandum filed by the plaintiffs, **JOHN K. DWIGHT, MARGO D. FORBES, PATRICIA D. HALLENBECK,** and **ELIZABETH D. RICHARDSON** (the "Plaintiffs"), in opposition to Chase's November 13, 2003 motion for partial summary judgment. Chase has moved for summary judgment with respect to Counts I, III and IV of the Plaintiffs' Amended Complaint. On December 16, 2003, the Plaintiffs filed an "opposition" memorandum consisting of a 25 page (untimely[1])

---

[1] By its motion dated December 29, 2003, Chase has moved the Court to strike the Plaintiffs' cross-motion for summary judgment (which is the Plaintiffs' second motion for

1

"cross-motion" for summary judgment, together with a "response" to Chase's Local Rule 56(a)1 Statement of Material Fact containing 45 paragraphs of alleged additional material facts and 23 evidentiary exhibits in support of the Plaintiffs' cross-motion.

The Plaintiffs' "response" does not include a separate section entitled "Disputed Issues of Material Fact" listing each issue of material fact as to which it is contended that there is a genuine issue to be tried, as is required by D. Conn. L. Civ. R. 56(a)2. Instead, it contains a separate section advocating additional material facts in support of the Plaintiffs' untimely cross-motion. Chase does not hereby reply to the Plaintiffs' cross-motion, including the 45 paragraphs of alleged material facts and the 23 exhibits submitted in support of same. Chase limits this reply to the Plaintiffs' interpretation of the Trust Agreement language at issue (contained at page 16 of their opposition memorandum), as Chase's motion for summary judgment is premised on the plain language of that Agreement.

The Plaintiffs, in order to avoid the entry of a summary judgment against them, advocate an interpretation of the Trust Agreement that is entirely inconsistent with and contrary to the plain language used by the Grantor of the Trust in the trust instrument itself. As such, the Plaintiffs' interpretation cannot properly be used to defeat Chase's motion; whereas, Chase's exercise of its discretionary powers under the Trust Agreement is consistent with the plain and ordinary meaning of the instrument as a matter of law.

## II. **Reply Argument**

The parties agree that the Trust Agreement provides, in relevant part, that:

> Upon Grantor's death, the Trustee shall pay the net income of the Trust Estate to or apply for the benefit of Grantor's wife, PATRICIA

---

summary judgment) as untimely under this Court's Scheduling Order of September 2, 2003.

> W. DWIGHT, during her lifetime or until her remarriage; provided, however, if and to the extent that the total amount of income available to Grantor's wife from all sources, including this trust shall, from time to time, in the sole judgment of the Trustee, exceed that which is deemed necessary for the comfortable support at the standard of living theretofore maintained by Grantor and his wife, then the Trustee shall distribute such excess income to or for the benefit of Grantor's then living descendants, per stirpes.

Chase interprets Article IV of the Trust Agreement to mean and, at all times acted as if in fact the instrument does mean, that it *"shall* pay the net income of the Trust Estate to or apply for the benefit of" Mrs. Dwight "during her lifetime or until her remarriage" and only "if and to the extent that the total amount of income available to [Mrs. Dwight] from all sources, including [the] trust shall, *from time to time, in the sole judgment* of [Chase], exceed that which is deemed necessary for the comfortable support at the standard of living theretofore maintained by" Mr. Dwight and Mrs. Dwight, may it then distribute "excess income" to the Grantor's descendants.

The Plaintiffs, however, at page 16 of their opposition memorandum, argue that the "standard for determining when" Mrs. Dwight would receive the Trust's income under Article IV of the Trust Agreement "required the Bank to do two things:

> (1) determine Defendant Dwight's income available from all sources; and (2) determine if it was sufficient to maintain her 'comfortable support at the standard of living theretofore maintained by Grantor and his wife.'"

Thus, the Plaintiffs continue to advocate an interpretation of the Trust Agreement that ignores the instrument's plain and primary instruction to Chase that it "shall pay" the trust income to Mrs. Dwight "during her lifetime" and may only pay any "excess income" thereunder to the Grantor's descendants "if" "from time to time," Chase, "in [its] sole

judgment" determines that there is in fact such "excess income" available to distribute to the Grantor's descendants.

The opening sentence of Article IV through the semicolon directs the Trustee to pay the Trust income to Mrs. Dwight during her lifetime. Although the next provision of the Article following the semicolon, "provided, however," recognizes the possibility of a determination being made by the Trustee "from time to time" that excess income exists, initially the income *must* go to Mrs. Dwight (as per the opening directive of the Article). Otherwise, the phrase "from time to time" would have no meaning. The income has to go somewhere (here, to Mrs. Dwight) before there can be a "time" for the Trustee to determine that there is excess income from the Trust that can be distributed to *someone else*. How can there be "excess income" from the Trust for the Grantor's descendants "then living" unless that income is first and primarily earmarked for Mrs. Dwight? Plainly, there cannot be a finding made by the Trustee "from time to time" that "excess income" exists that can then be distributed to the Grantor's descendants "then living" unless the Trust income is intended for Mrs. Dwight to begin with.

Indeed, under the Plaintiffs' construction of the Trust Agreement, there would never be any "excess income" as the income would always be paid to the Grantor's descendants unless there was *"insufficient"* income to maintain Mrs. Dwight's standard of living. See, Pl. Opp., at p. 16. How can there ever be any "excess income" under the Trust, if the true test is whether there is a *shortage* of income to comfortably support Mrs. Dwight, as advocated by the Plaintiffs? The trust instrument itself, however, never speaks in terms of "insufficient" income or a "shortage" of income. The Trust Agreement speaks of income that "exceed[s]" that which the Trustee determines "from time to time" to be necessary for

4

Mrs. Dwight's comfortable support and of a finding of "excess income" generated by the Trust that can be distributed to the Grantor's "then living" descendants.

The Plaintiffs' interpretation turns the Trust Agreement's provisions upside down and wholly eliminates the possibility of the Trustee "from time to time" exercising its "sole judgment" to determine whether "excess income" exists under the Trust that can then be distributed to the Grantor's "then living"descendants. The Plaintiffs' construction of the Trust Agreement ignores basic principles of language and construction and renders critical provisions of the language used in the instrument entirely meaningless. The Plaintiffs' analysis is convoluted, overreaching and, in a word, unreasonable. The Plaintiffs' interpretation, therefore, should be rejected.

In stark contrast stands Chase's reading of the Trust Agreement. Chase does not ask the Court to ignore language used in the Trust Agreement. Chase does not seek to have the Court create a new standard for determining when Mrs. Dwight would receive the Trust's income and when the Grantor's descendants may do so. Chase does not advocate a test that would require this Court to focus on "insufficient" or a "shortage" of income (terms that no where appear within the Trust Agreement at issue). Chase's interpretation of and operations under the Trust Agreement is entirely consistent with the plain and ordinary meaning of the language used by the Grantor in the trust instrument itself. Accordingly, based on the plain language of the trust instrument and the legal standard by which this Court must judge the discretionary actions taken by Chase, as trustee, thereunder, Chase respectfully submits that it is entitled to a partial summary judgment as more fully set forth in its memorandum of law of November 13, 2003.

## CERTIFICATION OF SERVICE

This is to certify that on this 30th day of December, 2003, a copy of the foregoing has been mailed by first class mail, postage prepaid, to all counsel and/or pro se parties of record, to wit:

Peter W. Benner, Esq.
Catherine M. Esposito, Esq.
Shipman & Goodwin, LLP
One American Row
Hartford, CT 06103-2819
(*Counsel for the Plaintiff*)

Robert B. Hemley, Esq.
Christina Reiss, Esq.
Gravel and Shea
76 St. Paul Street, P.O. Box 369
Burlington, VT 05402-0369
(*of Counsel for the Plaintiff*)

Robert P. Dolian, Esq.
Cummings & Lockwood, LLC
107 Elm Street, P.O. Box 120
Stamford, CT 06904-0120
(*Counsel for Defendant Patricia W. Dwight*)

Mark J. Kovack