**UNITED STATES DISTRICT COURT**
**DISTRICT OF CONNECTICUT**

| | | |
|---|---|---|
| JOHN K. DWIGHT, ET AL, | : | |
| Plaintiffs, | : | CIVIL ACTION NO. |
| | : | 3:03-cv-117 (JCH) |
| v. | : | |
| | : | MARCH 31, 2005 |
| JP MORGAN CHASE BANK | : | |
| (TRUSTEE), ET AL | : | |
| Defendants. | : | |

**RULING ON DEFENDANTS' MOTION FOR SUMMARY JUDGMENT**
**[DKT. NO. 28] AND PLAINTIFFS' MOTIONS FOR SUMMARY**
**JUDGMENT [DKT. NOS. 17 & 33]**

Plaintiffs John K. Dwight, Margo D. Forbes, Patricia D. Hallenbeck, and Elizabeth

D. Richardson (hereinafter collectively "Dwight" or "Grantor's children") and Defendant

JP Morgan Chase Bank ("Chase" or "Trustee") filed cross-motions for summary

judgment [Dkt. Nos. 28 & 33] on Dwight's claims for breach of fiduciary duty (Count I),

negligence (Count III), and conversion (Count IV).  Dwight also moved for summary

judgment [Dkt. No. 17] on his request (Count II) for a declaration of the rights and

responsibilities of the parties and an order compelling the Trustee to comply with the

plaintiffs' written notice of removal so that Dwight may appoint a new trustee for the

Russell S. Dwight, Jr. Trust.  For the reasons that follow, the Trustee's motion for

summary judgment on Counts I, III, and IV of the Amended Complaint is GRANTED

and Dwight's motion for summary judgment on those counts is DENIED.  Dwight's

motion for summary judgment on Count II is also DENIED.

I.    **BACKGROUND**

Russell Dwight, Jr. ("Grantor") and Patricia Dwight ("Mrs. Dwight") married in

1973, when Patricia Dwight was 58 years old.  It was the second marriage for both of

them and both had grown children from their previous marriages.  On January 27, 1982,

Grantor established, by trust agreement (the "Trust Agreement"), a trust that became

irrevocable upon his death (the "Trust").  Mrs. Dwight possessed significant assets both

at the time of her marriage to Grantor and at the time the Trust was created, including

$3.5 million worth of assets in a Prudential investment account and beneficiary rights to

a $1.5 million trust set up by her father.  At the time the Trust was created, Citytrust was

the named trustee.  Since that time, JP Morgan Chase Bank has succeeded Citytrust

as trustee.

> The Trust Agreement provides:
>
> Upon Grantor's death, the Trustee shall pay the net income of the Trust
> Estate to or apply for the benefit of Grantor's wife, PATRICIA W.
> DWIGHT, during her lifetime or until her remarriage; provided, however, if
> and to the extent that the total amount of income available to Grantor's
> wife from all sources, including this trust shall, from time to time, in the
> sole judgment of the Trustee, exceed that which is deemed necessary for
> her comfortable support at the standard of living theretofore maintained by
> Grantor and his wife, then the Trustee shall distribute such excess income
> to or for the benefit of Grantor's then living descendants, per stirpes.

Trust Agreement at Art. IV.1.  Patricia and Russell Dwight's joint tax return for 1982

showed an adjusted gross income of $106,682, of which $24,479 was capital gains

realized on the one-time sale of assets.  Plaintiff's Statement of Undisputed Facts in

Support of Motion for Partial Summary Judgment Ordering JP Morgan Chase Bank to

Withdraw as Trustee ("Pl's First Rule 56 Statement") at Ex. L.

Grantor died on February 4, 1983.  He was survived by Mrs. Dwight and his four

adult children, John K. Dwight, Margo D. Forbes, Patricia D. Hallenbeck, and Elizabeth

D. Richardson.  From the time of Grantor's death until August 2002, Patricia Dwight

declined any income from the Trust.  Mrs. Dwight periodically sent letters to the Trustee

informing it that she did not feel she needed the income at that time and would contact it if this situation changed.  See, e.g., Pl's First Rule 56 Statement at Ex. B.  As a result, the Trustee did not dispense any income from the Trust to Mrs. Dwight from 1983 to 2002 and, instead, provided the income to the Grantor's children.

On August 29, 2002, the then-86-year-old Mrs. Dwight wrote to the Trustee to request the income from the Trust.  Her letter stated:

> During the past year, because of a fall and an intestinal problem, I have been hospitalized twice and had an extended stay in a nursing home.  In addition, I contracted Lyme disease.  These medical problems have resulted in substantial medical expenses.
>
> For health reasons, I have decided to hire a live-in companion.  I anticipate the cost of such companion to be roughly $200 daily.  In addition, because of my lack of vision, I can no longer drive and have to hire a driver to take me on errands and to appointments.

See id. at Ex. C.  On September 10, 2002, Sheela Amembal, then Vice President and Trust Officer for Trustee, wrote to John K. Dwight, informing him that Mrs. Dwight had requested the income from the Trust and that he and his sisters would not be receiving any income.  See Plaintiff's Response to Defendant JP Morgan Chase Bank's Statement of Undisputed Facts and Plaintiff's Statement of Undisputed Facts for Plaintiff's Cross Motion for Summary Judgment ("Pl's Second Rule 56 Statement") at Ex. C.  Dwight's attorney responded by letter dated September 18, 2002, "insist[ing] that [the Grantor's children] continue to receive the Trust income" until Chase investigated the situation and determined that Mrs. Dwight truly needed the income to maintain the lifestyle enjoyed by her at the time the Trust was formed.  See Pl's Second Rule 56 Statement at Ex. E.  Later, on October 29, 2002, Dwight spoke with Amembal on the phone and insisted Chase undertake a "before and after" analysis of Mrs.

-3-

Dwight's lifestyle prior to issuing her any Trust income.  See id. at ¶ 26, Ex. O.

Amembal proceeded to collect financial information from Mrs. Dwight.  Mrs.
Dwight sent Chase her 2001 tax return and a projected budget of expenses in
November 2002.  The budget contained Mrs. Dwight's actual expenses for 2001, her
actual expenses through September 2002, and her projected expenses for October
through December 2002 and for 2003.  Amembal contacted Mrs. Dwight to discuss her
needs and standards.  Amembal also contacted Attorney Edgar T. See, the drafter of
the Trust Agreement, regarding interpretation of the terms of the Trust Agreement.[1]
See Local Rule 56(a)(1) Statement by Defendant JP Morgan Chase Bank, Trustee
("Chase Rule 56(a)(1) Statement") at ¶ 10.  Attorney See provided Chase with a copy of
a letter from Grantor's and Mrs. Dwight's accountants, dated April 19, 1983, discussing
the couple's 1982 tax return, a copy of the couple's 1982 Form 1040 federal tax return,
the couple's 1982 Connecticut Capital Gains & Dividends Tax Return, the couple's
1983 Form 1040 federal tax return, and the couple's 1983 Connecticut Capital Gains &
Dividends Tax Return.  See Chase Rule 56(a)(1) Statement at ¶ 10.  Amembal
contacted Mrs. Dwight again and was informed that Mrs. Dwight received income from
a trust set up by her late father ("Wineberg Trust") and that she did not defer any
income from that trust.  See id.  Additionally, Amembal corresponded with Mrs. Dwight
on several occasions, indicating that Trust income would likely become available to her
sometime between October and December of 2002.

Amembal presented the data she had collected to Chase's Discretionary Action

---

[1]The court notes that Attorney See's law firm represents the Trustee in this action.

Committee ("DAC"). The DAC discussed Mrs. Dwight's request during two meetings in late November and early December 2002. The DAC voted to honor Mrs. Dwight's request and to distribute the Trust's income to her. Chase informed Dwight of the results of the DAC's vote by letter on December 6, 2002 and began paying the net income from the Trust to Mrs. Dwight on January 1, 2003. Dwight filed suit on January 16, 2003.

Dwight argues that several financial facts are significant. First, Mrs. Dwight had substantial assets, owned her own home, and was receiving income from the Wineberg Trust at the time of, and during, her marriage to Grantor. At the time she requested income distribution, Mrs. Dwight had $3 million in assets in a Prudential Securities account. Further, Mrs. Dwight's 2002 tax returns show that she had a total taxable income totaling $476,809. However, the court notes that $382,016 of that sum was from capital gains realized on the one-time sale of assets.[2]

Subsequent to the Trustee's December 2002 decision that the income would go to Mrs. Dwight, the Trustee has twice re-examined the question of the receipt of Trust income. In 2003, it determined that $20,000 of the net Trust income would be paid to Mrs. Dwight and the balance to the Grantor's children.

By correspondence dated June 17, 2003, Grantor's children delivered a written notice of removal to Trustee, based on Article XV.1 of the Trust Agreement. That section states:

Any Trustee serving hereunder may be removed at any time by written

---

[2]Thus, Mrs. Dwight's ordinary income in 2002 was $94,793, compared with $82,203 in 1982.

> notice delivered to the Trustee from Grantor, if living; but if not, from a majority of (i) the adult beneficiaries then entitled to receive income distributions hereunder and (ii) any minor beneficiaries by their guardians or custodians.

<u>See</u> Trust Agreement at Art. XV.1.  Grantor's children directed Chase to relinquish the trusteeship to a successor trustee, The Chittenden Bank of Burlington, Vermont. Chase has refused to step down as Trustee.

## II.    STANDARD OF REVIEW

In a motion for summary judgment, the burden is on the moving party to establish that there are no genuine issues of material fact in dispute and that it is entitled to judgment as a matter of law.  <u>See</u>, F<small>ED</small>.R.C<small>IV</small>.P. 56(c); <u>Anderson v. Liberty Lobby, Inc.</u>, 477 U.S. 242, 256 (1986); <u>White v. ABCO Eng'g Corp.</u>, 221 F.3d 293, 300 (2d Cir. 2000).  A court must grant summary judgment "'if the pleadings, depositions, answers to interrogatories, and admissions on file, together with affidavits, if any, show that there is no genuine issue as to any material fact . . . .'"  <u>Miner v. Glen Falls</u>, 999 F.2d 655, 661 (2d Cir. 1993) (citation omitted).  A dispute regarding a material fact is genuine "'if the evidence is such that a reasonable jury could return a verdict for the nonmoving party.'"  <u>Aldrich v. Randolph Cent. Sch. Dist.</u>, 963 F.2d 520, 523 (2d Cir.) (quoting <u>Anderson</u>, 477 U.S. at 248), <u>cert. denied</u>, 506 U.S. 965 (1992).  After discovery, if the nonmoving party "has failed to make a sufficient showing on an essential element of [its] case with respect to which [it] has the burden of proof," then summary judgment is appropriate.  <u>Celotex Corp. v. Catrett</u>, 477 U.S. 317, 323 (1986). A party may not rely "on mere speculation or conjecture as to the true nature of the facts to overcome a motion for summary judgment."  <u>Knight v. U.S. Fire Ins. Co.</u>, 804

F.2d 9, 12 (2d Cir. 1986), <u>cert. denied</u>, 480 U.S. 932 (1987).

The court resolves "all ambiguities and draw[s] all inferences in favor of the nonmoving party in order to determine how a reasonable jury would decide." <u>Aldrich</u>, 963 F.2d at 523. Thus, "[o]nly when reasonable minds could not differ as to the import of the evidence is summary judgment proper." <u>Bryant v. Maffucci</u>, 923 F.2d 979, 982 (2d Cir.), <u>cert. denied</u>, 502 U.S. 849 (1991). <u>See</u> <u>also</u> <u>Suburban Propane v. Proctor Gas, Inc.</u>, 953 F.2d 780, 788 (2d Cir. 1992).

A party may not create a genuine issue of material fact by presenting contradictory or unsupported statements. <u>See</u> <u>Securities & Exchange Comm'n v. Research Automation Corp.</u>, 585 F.2d 31, 33 (2d Cir. 1978). Nor may she rest on the "mere allegations or denials" contained in her pleadings. <u>Goenaga v. March of Dimes Birth Defects Found.</u>, 51 F.3d 14, 18 (2d Cir. 1995). <u>See also</u> <u>Ying Jing Gan v. City of New York</u>, 996 F.2d 522, 532 (2d Cir. 1993) (holding that party may not rely on conclusory statements or an argument that the affidavits in support of the motion for summary judgment are not credible).

## III.    DISCUSSION

Grantor's children move for summary judgment on all four of their claims. They argue that Chase failed to perform the proper analysis prior to deciding to distribute the income to Mrs. Dwight in 2002, thereby abusing its discretion as trustee, acting negligently, and converting their property. Also, they argue that they constitute "a majority of . . . the adult beneficiaries then entitled to receive income distributions" from the Trust, Trust Agreement at Art. XV.1, and that the Trustee must, therefore, step aside in favor of a successor trustee of their choice.

-7-

The Trustee and Mrs. Dwight respond that only Mrs. Dwight is a beneficiary entitled to receive income distributions from the Trust and that, therefore, the Grantor's children's removal letter is of no effect.  Chase and Mrs. Dwight also assert that there are questions of fact in dispute as to whether Dwight abused his discretion or sought to remove Chase as trustee as punishment for exercising its discretion with regards to the Trust Agreement.  They also argue that the Trustee acted within its discretion in deciding to distribute the income of the Trust to Mrs. Dwight and, therefore, did not abuse its discretion, act negligently, or convert Dwight's funds.  Chase has moved for summary judgment on these three claims against it.

In his motion for summary judgment on the breach of fiduciary duty claim, Dwight relies on his allegations that the Trustee's determination to pay income to Mrs. Dwight was an abuse of discretion and misapplied the Trust terms.  See Plaintiff's Opposition to Defendant JP Morgan Chase Bank's Motion for Summary Judgment and Cross-Motion for Summary Judgment ("Pl's Cross Mot. Mem.") at Section III.  It is well-settled law that a fiduciary relationship, as here between the Trustee and Mrs. Dwight and Grantor's children, is one "characterized by a unique degree of trust and confidence . . . ."  Konover Dev. Corp. v. Zeller, 228 Conn. 206, 219 (1994).  A trustee holds a "position of the highest trust and therefore [it] is bound to use the utmost good faith and fair dealing in all [its] relationships . . . ."  Katz Corp. v. T.H. Canty & Co., 168 Conn. 201, 207 (1975).  However, liability of a trustee vested with discretionary powers "attaches only if the discretion is abused."  U.S. Trust Co. v. Bohart, 197 Conn. 34, 48 (1985).

Dwight's claims for conversion and negligence also rely on allegations that the Trustee abused its discretion in deciding to distribute Trust income to Mrs. Dwight.  See

-8-

Am. Compl. at ¶¶ 29-30, 42, 45-46.  If the Trustee did not abuse its discretion, as a matter of law, then Dwight cannot establish that Chase breached its duty of care to Dwight, see RK Constructors, Inc. v. Fusco Corp., 231 Conn. 381, 384 (1994) (elements of negligence are duty, breach of that duty, causation, and actual injury), or that Chase or Mrs. Dwight deprived him of property belonging to him, see Discover Leasing, Inc. v. Murphy, 33 Conn.App. 303, 309 (1993) (to establish a conversion the plaintiff must demonstrate that the property converted belonged to him, the defendants deprived him of his property, the defendants' conduct was unauthorized, and that the defendants' conduct harmed him).

### A.    Abuse of Discretion

A court's job when construing a trust in Connecticut is to find "the expressed intent of the testator . . . ."  Gimbel v. Bernard F. & Alva B. Gimbel Found., Inc., 166 Conn. 21, 26 (1974).  This must be done by "reading the instrument as a whole in the light of the circumstances surrounding the testator when the instrument was executed, including the condition of his estate, his relations to his family and beneficiaries and their situation and condition."  Id.; see also Mott v. Teagle Found., Inc., 156 Conn. 407, 415 (1968) (the court has "no power to change [the will's] language or to rewrite [the testator's] will.")

In the case at bar, the Grantor provided that "the Trustee *shall* pay the net income of the Trust Estate to or apply for the benefit of Grantor's wife, PATRICIA W. DWIGHT, during her lifetime or until her remarriage . . . ."  Trust Agreement at Art. IV.1. The Grantor's intent is clear and is plainly stated: during her lifetime and absent remarriage, Mrs. Dwight is to receive the net income of this Trust.  The Trustee shall so

give the income of the Trust to Mrs. Dwight unless the Trustee, "*in* [its] *sole judgment*" should conclude that "the total amount of income available to Grantor's wife from all sources, including this trust shall, from time to time . . . exceed that which is deemed necessary for her comfortable support at the standard of living theretofore maintained by Grantor and his wife . . . ." Id. (emphasis added). If the Trustee should find, in its sole discretion, that the Trust has produced "excess income", the Trustee is to "distribute such excess income to or for the benefit of Grantor's then living descendants, per stirpes." Id.

When, as here, a testator has entrusted broad discretionary powers in a trustee, a court must not interfere or substitute its own judgment, or interpretation of the facts, for that of the Trustee. See, e.g., Auchincloss v. City Bank Farmers Trust Co., 136 Conn. 266, 272-73 (1949). That is not to say that a broad grant of discretion "remove[s] a trustee from equitable control." Connor v. Hart, 157 Conn. 265, 274 (1968). The law "will not tolerate [discretion's] abuse, however great the creator of the trust intended the grant of discretion to be." Id. (quotation omitted). However, the trustee's exercise of discretion is "subject to the control of the court to the extent, and only to the extent, that there has been an abuse of it." City of Bridgeport v. Reilly, 133 Conn. 31, 37 (1946). For example, a trustee would abuse its discretion if it failed in its duty to deal impartially with all beneficiaries. See Gimbel, 166 Conn. at 35; see also Connor, 157 Conn. at 276. The court determines if an abuse of discretion takes place by looking to the clear purpose of the testator and considering "all relevant circumstances." Reilly, 133 Conn. at 37.

Dwight argues that the Trustee has breached its fiduciary duty by abusing its

-10-

discretion when it made the decision in 2002 to begin distributing the Trust's income to Mrs. Dwight instead of Dwight. First, Dwight claims that the Trustee made "at least an initial decision" prior to undertaking an analysis of Mrs. Dwight's income situation. Pl's Cross Mot. Mem. at 14. Dwight's evidence in this regard is Amembal's September 10, 2002 letter to Dwight informing him of Mrs. Dwight's request for the Trust's income and advising him that income payments to him would cease, see Pl's Second Rule 56 Statement at ¶¶ 10-11, Ex. C, and letters from Amembal to Mrs. Dwight assuring her that she would begin to receive income in the near future, see id. at 18. Additionally, Dwight argues that the Trustee undertook an "after-the-fact" analysis, that is, the Trustee began its analysis only after prompting from Dwight. See id. at 14-15. Dwight argues that the Trustee's analysis was based on a faulty reading of the Trust Agreement and was inadequate because it failed to specifically address questions Dwight deems relevant to the analysis, failed to sufficiently investigate Mrs. Dwight's budgetary claims, and failed to reach Dwight's view of the proper conclusion. See, e.g., id. at 15-21. Finally, Dwight alleges the Trustee failed in its promise to "engage in an 'ongoing analysis' of [Mrs.] Dwight's request . . . ." See id. at 23.

The Grantor's intent is plainly and clearly stated in the Trust Agreement. Mrs. Dwight is entitled to income in the first instance and, only if the Trustee determines – in its sole discretion – that Mrs. Dwight does not need the Trustee income (as that need is described in the Trust Agreement), does the excess income go to the Grantor's children. Having reviewed the Trust Agreement and the Trustee's undisputed conduct, the court concludes, in the absence of any disputed material issues of fact, that the Trustee's interpretation of the Trust Agreement is correct, and that the Trustee, its

-11-

conduct being reasonable, did not abuse its discretion.

At oral argument on March 23, 2005, Dwight's attorney acknowledged several uncontested facts.  First, Dwight admits that the Trustee assembled documentation including Mrs. Dwight's 2001 tax returns, budget, 2002 actual expenses, 2002 projected expenses, 2003 expected expenses, a letter from the Dwights' accountants regarding the couple's 1982 tax return, and the Grantor and Mrs. Dwight's 1982 and 1983 tax returns; spoke to Mrs. Dwight concerning trust income from other sources; confirmed Mrs. Dwight was not deferring income from other trusts; and spoke to the attorney who drafted the Trust Agreement regarding the interpretation of the Trust.  Second, Dwight admits that Chase undertook an analysis – one Dwight characterizes as "half-hearted" and merely designed to shore up its pre-determined opinion – following "prompting" by Dwight.  Third, Dwight admits that Amembal presented the data to the DAC, that the DAC met twice in late 2002, and that the DAC voted to pay the net income from the Trust to Mrs. Dwight.  Finally, Dwight has submitted an exhibit showing that he received a letter following the DAC's vote informing him that Mrs. Dwight henceforth would be receiving the Trust income.  See Pl's First Rule 56 Statement at ¶ 11, Ex. D.  The Trustee commenced dispersing the income to Mrs. Dwight on January 1, 2003.

Dwight's arguments are based first on a misreading of the explicit language of the Trust and then upon characterizations of the facts, which characterizations are not material.  The terms of the Trust do not compel the Trustee to investigate Mrs. Dwight's financial situation *before* it distributes money to her.  It compels the Trustee to pay excess income to the Grantor's children if, in its discretion, the Trustee becomes aware of the possibility that "excess" income may exist.  Dwight admitted at oral argument that

an investigation and analysis, *albeit* in his view a "half-hearted" one, took place, and that the Trustee's DAC decided in 2002 that no excess income existed.

It is important to remember that, in this case, the Trustee has broad discretion that the court must respect. The court must not substitute its own judgment, or that of Dwight, for that of the Trustee. See, e.g., Auchincloss, 136 Conn. at 272-73. The court may only exercise control over the Trustee "to the extent, and only to the extent, that there has been an abuse of it." Reilly, 133 Conn. at 37. Dwight may only attack the Trustee's decision if it "was the result of fraud, bad faith or an abuse of discretion." Auchincloss, 136 Conn. at 273.

Here, the record before the court does not even suggest, let alone provide a basis for the finder of fact to conclude, that the Trustee abused its discretion. The Trustee received a request for the Trust income from Mrs. Dwight, income to which she is entitled. Before giving Mrs. Dwight any income, the Trustee gathered information concerning Mrs. Dwight's financial situation, it discussed this information with Mrs. Dwight, and then put her request to a vote after several DAC meetings on the subject. The Trustee decided in her favor, notified Dwight of the decision, and began disbursement of Trust income to Mrs. Dwight on the first day of the following month.

The Trust Agreement does not mandate how the Trustee must make its discretionary decision, nor does it spell out what information the Trustee must examine to come to its decision. It certainly contains no provision that requires the Trustee to enunciate its reasoning, make specific findings, or announce those findings to the beneficiaries. The court finds, as a matter of law, that the Trustee acted with sufficient care in this instance and has not abused the broad grant of discretion the Grantor

specifically included in Article IV.1 of the Trust Agreement.

Further, the Trustee did not abuse its discretion or violate its fiduciary duty by failing to reconsider its December 2002 decision in July 2003.  Dwight argues that the Trustee failed to follow through on the promise found in its December 6, 2002 letter to "engage in an 'ongoing analysis' of [Mrs.] Dwight's request . . . ."  Pl's Cross Mot. Mem. at 23.  However, the Trust Agreement clearly states that the Trustee shall re-examine Mrs. Dwight's financial situation "from time to time" in its "sole discretion."  Trust Agreement at Art. IV.1.  Dwight's request for re-examination came on July 11, 2003, roughly seven months after the DAC's December vote.  See Pl's Second Rule 56 Statement at Ex. V.  Prior to that, there is no evidence that the Trustee considered the Trust income payment arrangement any more often than when Mrs. Dwight sent her annual letters refusing the Trust income.  There is no evidence that this level of attention prompted complaints from Dwight in prior years.  The court finds that the Trustee did not abuse its discretion to review its decision "from time to time" by refusing to re-examine its most recent decision seven months after making it.[3]

There is no evidence that the Trustee acted in any way outside the bounds of reasonable judgment or that it breached its fiduciary duty.  There is also no evidence that the Trustee breached its duty of care to Dwight or deprived Dwight of any property belonging to them.  See, e.g., RK Constructors, 231 Conn. at 384; see also Murphy, 33 Conn.App. at 309.  Therefore, the Trustee is entitled to summary judgment on Counts I,

---

[3]The court also notes that, at oral argument, both sides agreed that the Trustee has re-examined the question of excess income at least twice since the initial determination in December 2002.

III, and IV of the plaintiffs' amended complaint.[4]  The Trustee's summary judgment motion on those counts is granted.  The plaintiffs' cross-motion on Counts I, III, and IV is denied.

**B.    Trustee Removal**

Dwight also moved for summary judgment on Count II, his request for a declaratory judgment requiring the Trustee to honor Dwight's notice of removal.  Dwight argues that the Grantor's children constitute "a majority of . . . the adult beneficiaries then entitled to receive income distributions" from the Trust and that, as such, they are authorized by Article XV.1 to remove the Trustee.  Dwight argues that Grantor's children validly removed Chase as trustee by letter on June 14, 2003 and installed The Chittenden Bank in that position.  See Plaintiff's Motion for Partial Summary Judgment Ordering JP Morgan Chase Bank to Withdraw As Trustee, With Incorporated Memorandum of Law ("Pl's Mem. Partial Summ. J.") at 12; see also Pl's First Rule 56 Statement at Ex. M.

Grantor's children argue that the unambiguous language of the Trust Agreement compels summary judgment in their favor.  They argue that Mrs. Dwight and the plaintiffs are the beneficiaries currently entitled to receive income distribution from the Trust, see Pl's Mem. Partial Summ. J. at 8, and that the plaintiffs' children, "whose interest is contingent upon the Plaintiffs' death, are not," see id.  They advance several arguments as to why Article XV.1 cannot be read as designating Mrs. Dwight as the sole beneficiary currently entitled to income, as a result of her being the only beneficiary

---

[4]Mrs. Dwight did not move for summary judgment on Count IV, but she may do so, in light of this Ruling, if that motion is filed within 30 days of this Ruling.

receiving income at the time of the plaintiffs' attempt to remove it.  First, Dwight argues that this would put the Trustee in the position of being able to choose who could remove it by choosing to whom it distributed funds.  See id. at 9.  Additionally, Dwight argues that, if the Grantor wanted that Article to be read to say only those "actually receiving" income, or only Mrs. Dwight, could remove the Trustee, he could have done so.  See id.  Finally, Dwight argues that an interpretation that makes Mrs. Dwight the only person eligible to remove the Trustee would make the Grantor's designation of removal power to "a majority" of beneficiaries meaningless because "majority" implies more than one person.  See id.

The Trustee and Mrs. Dwight argue that there are issues of material fact to be decided concerning the Grantor's intent with regards to Trustee removal.  Specifically, the Trustee and Mrs. Dwight argue that only Mrs. Dwight is presently "entitled" to income from the Trust by the clear terms of the Trust Agreement.  See JP Morgan Chase Bank, Trustee's Memorandum of Law in Opposition to the Plaintiffs' Motion for Partial Summary Judgment ("Chase Partial Mem. Opp.") at 7.  The defendants argue that the Trust Agreement's grant of discretion to the Trustee to decide who receives income from the Trust means that, absent a finding that the Trustee abused its discretion, the Trustee's decision to give all of the Trust's income to Mrs. Dwight makes her the only beneficiary "entitled to receive" income.  See Chase Partial Mem. Opp. at 7.  Also, the defendants argue that Dwight's attempt to remove the Trustee is merely an attempt to install a trustee who will distribute the Trust's income to Dwight, and that the attempt constitutes an abuse of discretion, see 2 SCOTT, THE LAW OF TRUSTS § 107.2 (4th ed. 2001) ("SCOTT"), and an attempt by Dwight to remove the Trustee as

punishment for its decision, actions contrary to Connecticut law, see id. at 8 (citing Carroll v. Arnold,107 Conn. 535, 542 (1928)).  Chase also argues that the court may not have jurisdiction to decide this case because Dwight's claims may not satisfy the amount in controversy requirements for diversity jurisdiction.

The court finds that it does have jurisdiction to decide this case.  The plaintiffs alleged a sufficient amount in controversy.[5]  See Am. Compl. at ¶ 8.  This allegation is sufficient, absent a showing that the plaintiffs made their allegation in bad faith or that their claims cannot, to a legal certainty, exceed the $75,000 jurisdictional amount.  See Wolde-Meskel v. Vocational Instruction Project Cmty. Servs., Inc., 166 F.3d 59, 63 (2d Cir. 1999).  The court finds that the Trustee has not offered sufficient evidence for the court to find that the plaintiffs' amount in controversy allegation was made in bad faith or cannot reach the $75,000 threshold to a legal certainty.

As with any attempt to interpret a trust instrument, the court in this case must find "the expressed intent of the testator . . . ."  Gimbel, 166 Conn. at 26.  Specifically, in this case, the court must determine what the Grantor intended by the phrase "adult beneficiaries then entitled to receive income distributions hereunder . . . ."  Trust Agreement at XV.1 (emphasis added).  The phrase "then entitled" clearly refers to Mrs. Dwight until her passing, and thereafter to others.  Article IV.1 states that the Trust income "shall" be distributed to her, absent specific findings by the Trustee.  The dictionary defines "entitled" as "furnish[ed] with a right."  WEBSTER'S II NEW COLLEGE

_____

[5]It is undisputed that the Trust corpus is in excess of $75,000.  See Beacon Constr. Co. v. Matco Elec. Co., 521 F.2d 392, 399 (2d Cir. 1975) (". . . the amount in controversy is not necessarily the money judgment sought or recovered, but rather the value of the consequences which may result from the litigation.")

-17-

DICTIONARY 376 (1995).  Black's Law Dictionary defines "entitled" as "grant[ed] a legal

right . . . or qualif[ied] for."  BLACK'S LAW DICTIONARY 573 (8th ed. 2004).  Alternatively, it

defines an "entitlement" as "[a]n *absolute* right to a (usu. monetary) benefit, such as

social security, granted immediately upon meeting a legal requirement."  Id. (emphasis

added).  Therefore, the Grantor intended to convey the idea that only Mrs. Dwight, as

the automatic recipient of Trust income absent an affirmative finding by the Trustee, is

*entitled* to income, with the Grantor's children receiving money only in the event of

certain conditional circumstances.

      Dwight's argument that the Grantor must have intended multiple individuals to be

able to remove the Trustee because he provided that a "majority" must decide on

removal fails.  Even if Mrs. Dwight was the only person entitled to remove the Trustee,

her single vote would represent a one hundred percent "majority."  Also, the Grantor

could foresee a circumstance where only a single beneficiary remained, perhaps Mrs.

Dwight herself if catastrophe should strike, and it would not be reasonable to think that

the Grantor intended to strip from that remaining beneficiary the ability to remove the

Trustee simply because he or she was a single person.  Indeed, in Section XV.3, if a

trustee resigns or is removed, the Grantor contemplated a single person could have

demanded removal.  See Trust Agreement at XV.3 (". . . *the* party properly demanding

such removal . . . or, *if* more than one . . . .") (emphasis added).

      In sum, the court finds that Dwight has not met his burden to show that there is

no issue of material fact with respect to the Grantor's intent, nor his burden to prove

that he is entitled to judgment as a matter of law on Count II.  Indeed, it is this court's

conclusion as a matter of law that, while Mrs. Dwight is alive, she is the only "entitled"

beneficiary.  Therefore, plaintiffs' motion for partial summary judgment, on Count II, is denied as a matter of law.

**IV.    CONCLUSION**

For the foregoing reasons, the defendants' motion for summary judgment [Dkt. No. 28] on Counts I, III, and IV of the Amended Complaint is hereby **GRANTED**. Plaintiffs' cross-motion for summary judgment [Dkt. No. 33] on those counts is **DENIED**. Plaintiffs' motion for partial summary judgment [Dkt. No. 17] on Count II is also **DENIED**.


**SO ORDERED.**

Dated at Bridgeport, Connecticut, this 31st day of March, 2005.



/s/ Janet C. Hall_____
Janet C. Hall
United States District Judge